IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Jerry L. Angelo,                          :
               Plaintiff              :     Civil Action 2:07-cv-796

     v.                                :     Judge Marbley

Michael J. Astrue,                        :     Magistrate Judge Abel
Commissioner of Social Security,
              Defendant              :

**REPORT AND RECOMMENDATION**

Plaintiff Jerry L. Angelo brought this action under 42 U.S.C. §405(g) for
review of a final decision of the Commissioner of Social Security denying his
application for a period of disability and disability insurance benefits.  (Doc. 4.)  This
matter is before the Magistrate Judge for a report and recommendation on the
parties' cross-motions for summary judgment.  (Docs. 12 and 15.)  For the reasons
below, it is **RECOMMENDED** that Plaintiff's motion (Doc. 12) be **GRANTED in
PART.**

**Procedural History**

Plaintiff Jerry L. Angelo filed his application in September 2002, for a period
of disability and disability insurance benefits, alleging that he became disabled on
April 15, 2002.  (R. 60-61 and 758.)  The application was denied initially and upon
reconsideration.  (*Id*. at pp. 42 and 47.)  Plaintiff sought a *de novo* hearing before an
administrative law judge ("ALJ").  (*Id*. at p. 51)  On July 21, 2005, Plaintiff was

represented by counsel, Robert Urban, and testified at an administrative hearing before ALJ Rita S. Eppler.  (R. 754-801.)  A vocational expert, W. Bruce Walsh, and a medical expert, Gordon Snider, also testified.  (*Id*.)  On February 21, 2006, the ALJ issued a decision finding that Angelo is not disabled, as of the date of the decision, within the meaning of the Social Security Act.  (*Id*. at 31.)  Upon appeal, the Appeals Council denied Plaintiff's request for review.  (*Id*. at 8.)  Thus, ALJ Eppler's decision is the final decision of the Commissioner of Social Security ("Commissioner").

## Background

**Age, Education, and Work Experience.**  Plaintiff Jerry L. Angelo was born on August 26, 1958.  (R. 60.)  At the time of the hearing Angelo was 46 years old.  (R. 759)  He has a ninth grade education.  (*Id*. at pp. 79 and 760.)  He has worked as a maintenance man, delivery man, mechanic, and press operator.  (*Id*. at pp. 74 and 88.)  He last worked as a maintenance employee.  (*Id*.)

**Plaintiff's Testimony.**  Plaintiff Jerry L. Angelo testified that he has physical and mental limitations.  (R. 768-769, 773-775, and 778-781.)  The ALJ summarized Angelo's testimony:

> The claimant testified at the hearing that his sitting is limited to about three hours and that he can stand and walk only about two hours. He estimated that he could lift only ten pounds and that his hands go numb after using them for ten minutes. He complains of constant aching and throbbing of his knees and back with sharp pains going up and down all the time. He complained of swelling of the feet every morning when carrying items. He stated that his heart condition causes shortness of

2

breath and that he has sharp crushing heart pains. He has been using a breathing machine for about a year. He reported that he gets nauseated and passes out two times per week. He acknowledged that in a typical day he watches television and helps around the house cooking, vacuuming and going grocery shopping. He is able to care for his own personal needs. He plays with his grandchildren, takes them to the park and for ice cream.

(R. 27.)

**Medical Evidence of Record.**  Plaintiff Jerry L. Angelo was treated and/or assessed by several doctors.  The transcript submitted to the Court contains detailed medical records.  (See R. 118-567.)  The medical expert present at the hearing, Dr. Gordon Snider, summarized Plaintiff's medical problems as including:

Adverse sporadic heart disease, and he's status post acute cardiac malfunction, and that was in '02, May of '02, and multiple exhibits tell about that. [H]e had moderate amount of coronary artery disease. He . . . may have an angioplasty. But it is not well documented. Number two, he has degenerative joint disease of the knees, and he's had a torn medial meniscus on the right, and he's had multiple surgical procedures. Number three, he's much too heavy. He's obese. Number four, he has a chronic lumbosacral strain in association with degenerative disc disease of the lumbar area. And in addition to that also has a transitional fifth lumbar vertebrae. And he's had epdrirual injections for . . . relief of that. Number five, he has hyperlipidemia[.] [N]umber six, he's an ex-smoker and he has at least 40-pack years of smoking history. [Number seven] he has high blood pressure with left ventricular enlargement. [Number eight] there's a history of cervical strain in the first exhibit, it was lasting for a while and that was after one of his accidents. Number nine, he has depression, which was first documented in June '03. Obstructive sleep apnea, documented in 8/04. And then finally, he had vein stripping in his right leg, and that's after two episodes of thrombophlebitis.

(R. 790-791.)

3

**Medical Expert at the Hearing.** In addition to outlining Angelo's impairments, Dr. Snider gave his assessment of Plaintiff's residual functional capacity. Dr. Snider opined that Plaintiff could

- occasionally carry 10 pounds,
- frequently carry 5 pounds,
- occasionally lift 15 pounds,
- occasionally stoop, but not kneel, crawl or squat,
- stand and walk for 30 minutes at a time, for a total of two hours in an eight-hour workday, and
- sit for six hours in an eight-hour workday.

(*Id*. at pp. 791-92 and 795.) Dr. Snider noted that Angelo's depression would preclude him from working in an environment where there would be excessive mental strain. (*Id.* at 792.)

**Vocational Expert at Hearing.** A vocational expert, W. Bruce Walsh, was present at the hearing. (R. 754.) He testified that Plaintiff's past jobs include maintenance, furniture delivery, automobile mechanic, press operator, and kettle tender. (*Id*. at p. 794.) On the assumption that Plaintiff's limitations include those outlined in Dr. Snider's RFC assessment, the vocational expert opined that Angelo cannot perform his past relevant work. (*Id*. at 795.) The vocational expert also opined that Plaintiff could perform other jobs despite his limitations. (*Id.* at 795-797.)

**Administrative Law Judge's Findings**. The ALJ found that:

1. The claimant meets the insured status requirements of the Social Security Act through at least June 30, 2007.

4

2. The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 404.1520(b)).

3. The claimant has the following severe impairments: atherosclerotic heart disease with moderate coronary artery disease and with an acute myocardial infarction on May 2, 2002; degenerative joint disease of the knees with a torn lateral meniscus of the right knee; obesity; chronic lumbosacral strain with degenerative disc disease and transitional vertebra; hyperlipidemia; tobacco use until May 2002; hypertension with left ventricular hypertrophy; cervical strain; depression; obstructive sleep apnea and status-post vein stripping and a deep vein thrombosis, by history. (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§404.1520(d), 404.1525 and 404.1526).

. . . .

5. After careful consideration of the entire record, it is found that the claimant has the residual functional capacity to sit without any significant restriction, to stand and walk for about two hours total in an eight-hour work day and 30 minutes at a time, lift and carry up to fifteen pounds and engage in occasional bending and stooping but no squatting or being around dangerous machinery. Mentally, the claimant has only mild impairments relating to others including fellow workers and supervisors; understanding, remembering and following instructions; maintaining attention, concentration and pace to perform simple repetitive tasks and withstanding the stress and pressure associated with day-to-day work activity which is defined as limiting work that involved production quotas and time pressures.

. . . .

6. The claimant is unable to perform any past relevant work (20 CFR §404.1565).

. . . .

7. The claimant was born on August 26, 1958 and was 43 years old on the

alleged disability onset date, which is defined as a younger individual age 18-44 (20 CFR §404.1563).

8. The claimant has a ninth grade education and is able to communicate in English (20 CFR §404.1564).

9. Transferability of job skills is not material to the determination of disability due to the claimant's age (20 CFR §404.1568).

11. The claimant has not been under a "disability," as defined in the Social Security Act, from April 15, 2002 through the date of this decision (20 CFR §404.1520(g)).

(R. 25-30) (emphasis removed).

**Standard of Review**

This Court has jurisdiction to review the Commissioner's decisions pursuant to 42 U.S.C. §§405(g), 1383(c)(3). Judicial review is limited to a determination of whether the decision is supported by substantial evidence, and whether the Commissioner employed the proper legal standards. *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir.1994) (internal citations omitted). Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" *Id*; *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (internal citations omitted). The Commissioner's findings of fact must be based upon the

6

record as a whole.  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) (internal citations omitted).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'"  *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985) (citing *id*.).

**<u>Analysis</u>**

Plaintiff Jerry L. Angelo's brief essentially makes three arguments:

- <u>Obesity</u>.  The ALJ erred by failing to properly consider Plaintiff's obesity as required by Social Security Ruling 02-01p.

- <u>Remand</u>.  This case should be remanded pursuant to 42 U.S.C. § 405(g) to admit 200 pages of additional evidence.

- <u>Listing 12.05(C)</u>.  The ALJ failed to properly evaluate whether Plaintiff's mental and physical limitations satisfy Listing 12.05(C).

<u>Obesity</u>.  Social Security Ruling 02-01p, 2000 WL 628049 (Sept. 12, 2002), explains the Administration's policy and protocol on the evaluation of obesity. "Obesity is a complex, chronic disease characterized by excessive accumulation of body fat."  SSR 02-01p.  The Ruling recognizes Body Mass Index (BMI) as one of the indicia of an individual's degree of obesity.  *Id*.  BMIs of 30.0-34.9 (Level I), 35.0-39.9

7

(Level II), and 35.0-39.9 (Level III) represent the classification of the degree of obesity.  *Id.*  Under this system of classification, Level III also includes BMIs above 40, and it is considered extreme obesity because of the potential for developing obesity-related problems.  *Id.* Obesity increases the risk of developing impairments such as osteoarthritis and sleep apnea, and may contribute to mental impairments such as depression.  *Id.*

SSR 02-01p provides that at step two of the five step evaluation, obesity may be considered severe alone or in combination with another medically determinable impairment.  It further provides that the Administration will do "an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe."  SSR 02-01p[6].  SSR 02-01p also explains that a claimant's obesity must be considered not only at step two of the Commissioner's five step evaluation process, but also at the subsequent steps.  The Ruling provides that:

> The effects of obesity may not be obvious. For example, some
> people with obesity also have sleep apnea. . . . An assessment
> should also be made of the effect obesity has upon the individ-
> ual's ability to perform routine movement and necessary phys-
> ical activity within the work environment. Individuals with
> obesity may have problems with the ability to sustain a function
> over time. . . . [O]ur RFC assessments must consider an individual's
> maximum remaining ability to do sustained work activities in an
> ordinary work setting on a regular continuing basis . . . . In cases
> involving obesity, fatigue may affect the individual's physical and
> mental ability to sustain work activity. This may be particularly
> true in cases involving sleep apnea.

8

> The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from arthritis alone.

SSR 02-01p.  *See also* 20 C.F.R. §404.1523 (explaining that if the Administration finds "a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.")  In sum, "the ALJ must explain how conclusions regarding a claimant's obesity were reached."  *Fleming v. Barnhart*, 284 F.Supp.2d 256, 271 (D. Md. 2003).  SSR 02-01p is binding on all components of the Administration.  *See* 20 C.F.R. §402.35(b)(1); *Blea v. Barnhart*, 466 F.3d 903, 911 (10th Cir. 2006).

An adjudicator must consider the impact of a claimant's obesity on his/her residual functional capacity.  At step five of the sequential analysis, the burden shifts to the Administration to show that there are other jobs in significant numbers in the economy that the claimant can perform consistent with his/her residual functional capacity, age, education, and work experience.  *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548(6th Cir. 2004); 20 C.F.R. §404.1520 (a)(4)(v).  When the claimant is obese, the ALJ must consider this in his/her assessment.  SSR 02-01p; *Young v. Barnhart*, 282 F.Supp.2d 890, 897-898 (N.D. Ill. 2003).

I cannot say that the ALJ's decision demonstrates that she expressly considered Plaintiff Jerry L. Angelo's obesity in a manner consistent with SSR 02-

01p. At step two of the five step evaluation, the ALJ's decision recognizes that Angelo's impairments include (among others) degenerative joint disease of the knees with a torn lateral meniscus of the right knee, depression, obstructive sleep apnea, and obesity. (R. 25.) At steps three through five, however, there is no indication whether Plaintiff's obesity was considered as contemplated by SSR 02-01p. At step three the decision states that: "The claimant's obesity is not a condition described in or equivalent to the Listing of Impairments." The decision makes no mention of SSR 02-01p. Also, given that at step two other impairments that accompany, compound, or are compounded by obesity were identified, SSR 02-01p (at minimum in the current context) contemplates a further explanation. *See generally Fleming*, 284 F.Supp.2d at 270-272.

In addition, the decision does not indicate that Plaintiff's residual functional capacity was assessed in a manner consistent with SSR 02-01p. There is no indication of the individual and/or combined effect of Angelo's obesity on other illnesses.[1] The ALJ relied on the medical expert at the hearing. (R. 27.) Thus, it might be arguable that the ALJ intended to incorporate the expert's explanation and analysis in her decision. However, assuming that the argument is plausible, the

---

[1] In April 2002, Plaintiff was 277 pounds with a BMI of 43.4. (R. 261.) Plaintiff testified at the hearing that he is "5' 7", and 287 pounds." (*Id*. at p. 762.) This would result in a BMI of 44.9. *See* http://www.cdc.gov/nccdphp/dnpa/bmi/adult_BMI/ english_bmi_calculator/results_obese.htm?pounds=287&inches=67

medical expert did not consider Angelo's obesity as contemplated by SSR 02-01p. The extent of the expert's attention to the issue was: "Number three, he's much too heavy. He's obese." (R. 790.)

Given that Plaintiff's obesity did not receive the consideration contemplated by SSR 02-01p, it is RECOMMENDED that the case be remanded for further consideration.

Remand. Since the case is being remanded, the ALJ should decide whether to consider the 200 pages of additional evidence.

Listing 12.05(C). I have considered plaintiff's argument regarding Listing 12.05(C) and conclude that the ALJ did not commit reversible error in finding that Plaintiff Angelo's mental and physical limitations satisfy the Listing. There is substantial evidence supporting the determination that Angelo is not mentally retarded and has not suffered from significant subaverage intellectual functioning with deficits in adaptive behavior initially manifested before age 22. During his adult years, Angelo has engaged in substantial gainful employment as a maintenance man, delivery man, mechanic and press operator. He has raised two children and is now assisting in raising two grandchildren. (R. 761 and 763.) He passed a written test for a driver's license. (R. 762.) He engages in a full range of household chores. (R. 777.) He takes care of all his own personal needs. (R. 777-778.) No psychologist or psychiatrist has expressed the opinion that Angelo suffers

11

from mental retardation.  Dr. Spindler found that Plaintiff was within the borderline range of intellectual functioning.  (R. 301-302.)  Although Angelo has only a ninth grade education, he did not take special education classes and he can read and write.  (R. 72 and 79.)

Accordingly, it is **RECOMMENDED** that Plaintiff Jerry L. Angelo's motion (doc. 12) be **GRANTED in PART** and that the case be remanded for further consideration of Plaintiff's obesity in light of Social Security Ruling 02-01p, 2000 WL 628049 (Sept. 12, 2002).

If any party objects to this Report and Recommendation, that party may, within ten (10) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

 s/Mark R.  Abel
United States Magistrate Judge

12